Good afternoon, your honors. May it please the court. Quinn Denver, federal defender from Sacramento, representing Mr. Veal, and I'm with the staff attorney, Livia Morales, who also worked on the case. Your honors, we raised four issues in our briefs, but I would like to focus on the question of sufficiency of the evidence as to the two counts. The stalking and the violation of the protective order. And I'd like to say at the beginning that obviously Mr. Veal's feelings towards his niece and his conduct is certainly dysfunctional. I think the real question is did it violate the federal criminal statutes that he was charged with violating, which are very precise as to what is required to violate them. If I could turn first to count one, which is the so-called interstate stalking violation. That statute requires that his conduct after crossing the state lines must have put his niece in reasonable fear of death or serious bodily injury as defined in section 1365 of title 18. When the district court looked at this, the court spent a lot of time focusing on the fears that the family held, and I think that is not the right focus. The indictment was very clear that the niece was named as the victim, and it was said that Mr. Veal had placed her in fear. Now, on the question of fear of death or serious bodily injury to her family, which would have been a basis for a violation, she never testified to her feeling any fear about anything happening to her family. So the question then is what fear she may have felt as to herself that was caused. Now, wasn't there some testimony by the woman to the detective, Detective Burwick? I was going to address that if you like, Your Honor, I would. But doesn't that get to your point? There was some. Because if I understand your argument, you're saying there's no evidence from her that she was put in fear. There was no evidence that she was put in fear at all, whether from her or someone else, as to her family. And then the question is what fear, was there evidence that she feared for her own either death or serious bodily injury. And I think on that, she never claimed that she feared that Mr. Veal would cause her serious bodily injury. She said at one point she feared being kidnapped, but that just does not meet the statutory definition. So then the question becomes, did she express a fear of death from him? And she never testified to that, but there was testimony that when she spoke to the detective, she told the detective that she had told her mother that she feared that he might kill her. So that was really the only evidence that she feared her own death. And I think when she was asked why she felt that, she said, and I quote, I just think he might, I don't know. And I don't think that testimony is sufficient to show that he caused her to be in fear of death for two reasons. What caused her to make the statement to her mother? What caused her to... It wasn't him. Well, I think there's two things, Your Honor. One is I think what caused her fear was not just his conduct, but what her mother... What caused her to make the statement to her mother? There was no context given on the statement. We don't know what the context was in which it came out. She merely said... It expressed a fear. And that's what the mother testified, right? No, the mother didn't testify to it, Your Honor. The detective testified. There's a tape of the detective talking to her. And in that, she acknowledged at some point saying to her mother that she feared he would kill her. And why I don't think that is sufficient is two reasons. One is I think the fear has to be a reasonable fear under the statute. And this came into evidence, right? It did come into evidence, yes. And I don't think that's a totally unreasonable fear. There was nothing in his conduct that suggested that he would kill her. And I think the other thing is that his conduct after crossing the state lines must have caused the fear. And in this case, I think it was the mother's, what the mother had told her about him that really caused the fear. She even said that she changed her views of him, quote, I found some more stuff about him because before my mother hadn't told me all of the stuff. And then she said that her mother had told her, number one, that Mr. Veal might hurt her, though there was nothing to suggest that. And then she also, the mother, made the false accusation, at least totally unsupported, that Mr. Veal had molested some children in Mexico. So I think if she had a fear of death, it was unreasonable, and it wasn't caused by any of Mr. Veal's involvement, which is fairly limited and would not cause anybody to think that she was going to kill him. That doesn't say the fear has to be reasonable? The statute requires it, Your Honor. It has to be a reasonable fear? A reasonable fear. It is expressly required. So I think that we point out, I think, where there's some other evidentiary failures, but I think that the major one there is that they did not meet that element of statute. The way I read this, it was just a little girl, an eight-year-old girl, and she wasn't being testifying in court during this interview. I'm thinking a little girl like that is likely to be afraid of something awful happening to her. That's how the district judge put it, those words, I think. Rather than having something more concrete, I'm afraid he'll do this, though I'm not afraid he'll do that, the way an adult might size up a threat. Why wouldn't that be enough, and is that supported? Well, Your Honor, I think the statute requires it has to be a fear of death or serious bodily injury, and serious bodily injury is defined very, very clearly, and I won't take you through the five elements of it, but it is just what it sounds like. And I think, first of all, it was unclear that she had any fears. At various times she said she didn't like him anymore. They never really addressed did she have a reasonable fear and what was it caused by, and I think there's also questions about what he intended to, but I'm trying to focus on what I think is the biggest hole in that particular count. On count two, the interstate travel to violate a protective order, you must cross state lines with the intent to engage in conduct that violates the order, and you must subsequently engage in the conduct. Could we back up for just one second? Why isn't this leading question by the detective in the girl's answer enough? If the interview came in evidence, did you tell your mother that you were afraid that he was going to kill you? Yeah. Because, number one, that's a totally unreasonable fear, and number two, it was really induced by the mother saying that he might hurt, that he, Mr. Vail, might hurt her. She was told by her mom, this man has molested children in Mexico and he might hurt you. It wasn't Mr. Vail's conduct, which as far as going to her former school or the mailings and those kind of things that caused that fear. So it was either unreasonable and it was caused more by the mother saying he might hurt you, you know, but there's been nothing that indicated he would ever hurt her. I mean, I think whatever his dysfunctional thinking, it didn't seem to go in that area. Who determines the reasonableness? Is that a question of law or did the jury necessarily have that before? I think the trier of fact has to determine that, and the court has to determine whether a reasonable trier of fact could find that beyond a reasonable doubt based on the evidence here. But if you look at his conduct, there's not a single thing that would indicate that he would kill her or that he would do violence to her or even suggest it. I mean, his conduct is unusual, but it certainly was not of that nature. On the question of the interstate travel that violated protective order, they have suggested that the part of the order that prohibited him contact with the niece or the family was violated. In fact, it was never. He never contacted them when he went down there on May 1st of 2002. The government suggested that he violated that part of it, which said that he couldn't go within 200 yards of the place of work. We've dealt with that in the reply brief at pages 10 to 13. He worked at the school. I'm sorry? The mother worked at the school. She had two years earlier. She did then, didn't she? No, two years earlier. I'm sorry. She worked there then. She had told him two years earlier that she had worked there. But she was working three schools at the time. She was. That's right. But that was not charged in the indictment, Your Honor. And the other thing is that the statute says you have to violate the part of a protective order that provides protection against physical proximity to a person. The part that says he can't come within 200 yards of her, if he violated that, it would meet the statute. But this was a place. This was not a person. It didn't say when she was there or anything of that nature. And I tried to lay out in the reply brief at pages 10 to 13 why that new theory, which was never charged, never argued by the prosecutor, was never found by the judge just simply as not good enough. And the last part of it is the requirement. The other way to sustain the conviction would be if you could find that he intended to harass her or her family. As we've shown, again, in the reply brief, the California statute defines harassment as requiring a course of conduct. A course of conduct is further requiring two or more acts. And as far as his post-crossing state line conduct, the indictment charged only one act, and that's all that there was evidence about, that he went to her former school to deliver it. So we don't believe that it could qualify under the harassment part of the protective order either. Thank you, Counselor. Your time has expired. We'll hear from Ms. Smith. May it please the Court. Kimberly Smith for the government. Your Honors, in reference to my colleague's first argument with regard to stalking, the explanation that somehow the defendant stalking the family does not somehow implicate the minor is misplaced. We're dealing in this case with a child that was 7 years old at the time that his inappropriate behavior began. At the time of trial, she was 9 years old. It is impossible to extricate the behavior towards a child's parents, especially when that behavior is designed and targeted to establish relationship between the defendant and the 7-year-old child. Furthermore, the reasonableness of the child's fear for her serious bodily injury was also evidenced over and over again in the record. As you have pointed out, this is a child. This is a child who is very impressionable, which is why the law is set up in such a way to include or to encompass the tender age of the child. And it's that maxim that we learned very early in law school applied to criminal law, that you take your plaintiff as you find him. It's the defendant who triggered this behavior. And to somehow implicate that it was the mother who induced these thoughts into this child's head is inappropriate. It is the mother's responsibility to ward off danger, and she did so. But for the defendant's inappropriate and, frankly, dangerous behavior, she would not have been in a position to say anything, to induce anything. She was responding reasonably to the clear and present threat the defendant put the child in and notified her parents he was putting the child in over and over again. To say that somehow kidnapping, the fact that the child said that she was scared that she was going to be kidnapped is somehow not evidence of the serious bodily injury doesn't hold water. Kidnapping, while may not in and of itself have elements that speak to serious physical injury, it is repeatedly referenced as the kind of crime that is considered a crime of violence. For instance, in the 924C, there's a U.S. Supreme Court case, United States v. Olivos-Oscos, I'm sorry, it's a Ninth Circuit case that explains that though kidnapping does not contain every element of violence, it is a crime of violence. And the United States Supreme Court case, Rodriguez v. Moreno at 526 U.S. 275, kidnapping is a crime of violence within the meaning of 924C. So to say that somehow kidnapping is not a serious bodily injury is inappropriate. Counsel, it would have been easier to review this if there were findings of fact. I think this was tried to the judge rather than to a jury. Is that right? It was, Your Honor. So it was a bench trial but no findings of fact except the judge's narrative statement. Yes. Can you show me exactly what words to use in the narrative statement that show that each element of 2261A is satisfied? In terms of him going, the judge did not go, Your Honor, element by element through. He did make conclusions. He did find at one point that beyond a reasonable doubt the defendant's behavior was threatening. I saw at the end, he says, what is this girl to think of a man that age behaving in this way but that he's frightening and wants to take charge of her in some way? And her fear that he would kill her or hurt her seems to me is reasonable, and it's certainly reasonable for a youngster to have. That was as close as I could get. Is there anything better? Well, he also said on record of transcript, the December 3rd of 2003 transcript, because the dates kind of overlapped at 342 to 348, that the defendant's conduct was beyond a reasonable doubt. That's what I'm reading from. Oh, okay. Well, the threatening conduct. Why don't you tell me the page and I'll go in line if you want me to look at something else. No, Your Honor. Nothing beyond that. Nothing beyond that. That was the conclusion that the court set. Okay. Does he say exactly what she's afraid of? He does not summarize that. The court does not summarize that. But it is in the record and it was considered by the court. And he does say at some point when he's defining the defendant's presence and how she appeared in court that she seemed very self-possessed and was not allowed. Can we properly make a decision that says the judge found that the little girl feared that the man would kill her and that's a reasonable fear? Is what the judge said good enough to support that? Yes, it is good enough to support that, especially given the fact that he made the statement that it was beyond a reasonable doubt threatening in this case. It's also important, I think, one of the Curious, I can't remember for sure. I know when I was a district judge, when I had a bench-tried case, I always made findings. I can't remember if I was required to make findings or whether it was just what was usually done. Does the rule require findings of fact? It does not require findings of fact. To the extent that it doesn't require straight findings of fact in terms of how you're asking, i.e., it would have been easier if there had been a list of elements and a list of how he found. And I think that he apparently from the record felt that the statements that he made were crafted in such a way to cover that very concern of a review in court, i.e., that he did make his findings beyond a reasonable doubt and so stated in the record and tied that to the language and to the proof of finding. I don't have all the findings, but I'll tell you what my principal reasons are. That's how he characterized it. Yes, that's how he characterizes it. Yes, that's correct. But he did make findings. I mean, he did make findings and tie them to the elements in a general sense and in a way that he felt that he identified all the applicable elements and found why he found that they were proved beyond a reasonable doubt. Another aspect of the – Do you know why nobody said, Judge, the rule says that you should make findings or we request findings or something like that? Why they didn't? I'm sorry. I would have thought the prosecutor, since they were winning, would ask for findings of fact in order to get a record that would be clear and solid. And I'm sure if she were still here and thought about it on hindsight, she probably would have requested the same thing, Your Honor. It just was something that the court took upon itself to make sure that he found findings of fact to support the proof beyond a reasonable doubt standard. In terms of the interstate travel, the second argument with regard to contact to the school, the insinuation that contact with the child's teacher was not somehow contact with her is not credible. The whole point of him being at the school is to establish contact. And when he goes to the school, as the record points out, he says to the secretary and he gives her the package, please give this to XG or to XG's teacher, clearly showing his intent to establish contact. And then the point of the letter that he wrote to XG's teacher was to have her, quote, correct things so that he can continue to see her again. So to say that somehow the contact with the school was not directed towards XG or did not implicate her is inappropriate. Furthermore, the child's mother did, in fact, work on the school. And as the record shows, did, in fact, work on the school on that day, on May 21st of 2002, a fact which the defendant was well aware. What about Mr. Denver's point that the allegation should be that she can't come any closer than 200 yards, let's say, of the person rather than the place? What's your response to that? Well, it's of the indictment charged that in terms of the person. However, the record supports that he was, and this is something that we're looking at whether the finder fact was reasonable in their findings. And they are allowed to consider things other than what is specifically stated in the indictment. And that's what the court in this case did. So although the person is an issue, A, the defendant showed an intent to be within 200 yards of the person because he gives a package and says it's for XG or for XG's teacher, clearly indicating that he thought that he might, in fact, be in contact with her at that particular point in time. The fact that she's not there is not relevant. Secondly, this was a place, in addition, that was well documented that he had been twice ordered, not once, but twice ordered to stay away from and showed up there anyway. So that in this case, he clearly violated the order with respect under the statutory interpretation. One of the final things I just wanted to bring to the court's attention in looking at the, going back actually to count one, looking at the purpose and intent of 2261A, one of the things that the House Report 106455 points out in its background in the need for legislation is the fact that the concept of harassment is one that varies from state to state and that it can include anything from threats of violence against the family to immediate family members, that it may involve annoying or menacing behavior, that although... You can't convict a man of a crime based on what the legislative history says it has to be in the statute. No, no, no. Just in terms of the reasonableness that the finder of fact had in finding the things and in considering the things and actions that took place that were also against the child's parents, including the mailings, including continuing to contact the family even after he was asked not to, the violation of the protection order of March 17th of 2000, the second violation of an order in 2002. And in terms of whether or not there were two or more, although the statute does not tie it to the need for two or more, it's simply not part of the statutory language or case law, the fact is that he was under court order in March 17th of 2000 and violated it. And then he violated yet again May 1st of 2002. So even if that were an issue, the record shows that those issues have been met. Thank you, Your Honors. Your time has expired. The case just argued will be submitted for decision. And we will now hear argument in Vigil v. Lamarck.
judges: Beezer, O'scannlain, Kleinfeld